CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRANK DELORENZO, ) | |
|     Petitioner, ) | Civil Action No. 7:23cv760 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| COREY NUNLEY, Acting Warden, ) | By: Robert S. Ballou |
|     Respondent. ) | United States District Judge |

Frank Delorenzo, a federal inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that the Bureau of Prison's risk-assessment tool, "Prisoner Assessment Tool Targeting Estimated Risk and Needs" (PATTERN), does not comply with all terms of the statute which enabled its creation, 18 U.S.C. § 3632(a). Because of its failure to comply with the statute, Delorenzo asserts, he is being denied incentives for recidivism reduction programming and the ability to have his earned time credits under the First Step Act applied to reduce his sentence. The Respondent has filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. For the reasons stated below, I must grant the Respondent's Motion to Dismiss.

## I. Background

Delorenzo was convicted of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 in the Southern District of New York and sentenced on July 7, 2021, to serve 112 months in the Bureau of Prisons (BOP), followed by a three-year term of supervised release. His projected release date is June 6, 2028, according to the BOP inmate locater system, assuming his continued entitlement to good time credits. At the time he filed his petition, Delorenzo was housed at USP Lee, a prison within the jurisdiction of the United States District Court for the Western District of Virginia.

Upon entry into the Bureau of Prisons, Delorenzo was given his first Risk and Needs Assessment with the PATTERN assessment tool, receiving what he described as a "chart topping" score in the high range, and he was recommended to take classes offered by education, recreation, or the chapel.  ECF No. 1, at 24.  He took his third assessment in April 2022, receiving a general level score of 68 and a violent level score of 44.  *Id.* at 24–25.  His score continued going down, through his fifth assessment in April 2023, when he had a general level score of 55 and a violent level score of 40, significantly lower, but still in the high range.  In October 2023, on his sixth assessment, his scores remained unchanged, despite his continued participation in programming.  *Id.* at 25.  Delorenzo has determined that the best possible score he can get before his release, if he takes every possible program available, will bring him only to a medium level, meaning that he will not get to apply his First Step Act (FSA) credits for Evidence Based Recidivism Reduction programs to reduce his sentence, nor will he be eligible for other incentives available from Recidivism Reduction program participation.  After exhausting his remedies, he filed his petition in November 2023, stating that he had taken every Recidivism Reduction program that he had been offered and that had been made available to him.  *Id.* at 25.  Respondent concedes that he had earned 290 days of time credit as of March 2024.  ECF No. 11.  Delorenzo challenges the PATTERN assessment instrument as contrary to law, resulting in an incorrect determination of his sentencing time.  He raises the following claims:

1. The Attorney General and Independent Review Committee exceeded their statutory authority by classifying his crime of conviction as a violent offense, contrary to the Supreme Court's holding in *United States v. Davis*, 588 U.S. 445 (2019), and without

2

   the notice and opportunity for comments required by the Administrative Procedures Act (APA).

2. The PATTERN assessment instrument does not give him "a meaningful opportunity to reduce [his] classification" as required by the enabling statute, 18 U.S.C. § 3632(a)(5)(A).

3. The PATTERN assessment instrument improperly bases his recidivism risk on heavily weighted static factors rather than on dynamic factors that can be expected to change during his incarceration, violating 18 U.S.C. § 3632(a)(4).

4. The BOP has failed to facilitate his participation in sufficient Recidivism Reduction programming and has failed to provide incentives to participate in such programming, as required by 18 U.S.C. § 3632(b) and (d).

## II. REQUIREMENTS FOR HABEAS REVIEW

Habeas corpus relief under 28 U.S.C. § 2241 is available for one who claims he is in custody in violation of the Constitution or laws of the United States. Suits alleging improper calculation of a sentence or credits against the sentence, fall under the purview of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Delorenzo was at USP Lee when he filed this suit. In July 2024, he notified the court he had been transferred to FCI Forrest City in Arkansas. Because he was held within the jurisdiction of this court at the time the suit was filed, this court retains jurisdiction. *Lennear v. Wilson*, 937 F.3d 257, 263 n.1 (4th Cir. 2019).

The Respondent argues that the case is not yet ripe, because Delorenzo is not eligible to have the credits applied to his sentence because his earned credits do not yet equal the amount of time he has left to serve (his remaining sentence), and because he does not (and cannot) have a recidivism risk score of low or minimum. Resp. Br. Supp. Mot. Dismiss at 16–17. That he is not

3

eligible because he can never get a score of low or minimal before he has finished serving his time is a fallacious argument, since the entire point of Delorenzo's challenge is that PATTERN's alleged defects make it impossible for him to get to a low score. As for it being too early to consider his challenge, the Supreme Court has rejected that argument:

> Even if the restoration of the respondents' credits would not have resulted in their immediate release, but only shortening the length of their actual confinement in prison, habeas corpus would have been the appropriate remedy. For recent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases.

*Preiser*, 411 U.S. at 487. The case is now ripe for consideration.

### III. DISCUSSION

**A. The First Step Act and the PATTERN Assessment**

The First Step Act directed the Attorney General and the Independent Review Committee to develop a risk and needs assessment system to:

> (1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
>
> (2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;
>
> (3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);
>
> (4) reassess the recidivism risk of each prisoner periodically, based on factors *including* indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

4

> (5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that—
>
> (A) all prisoners at each risk level have a *meaningful opportunity to reduce their classification during the period of incarceration*;
>
> (B) to address the specific criminogenic needs of the prisoner; and
>
> (C) all prisoners are able to successfully participate in such programs;
>
> (6) *determine when to provide incentives and rewards* for successful participation in evidence-based programs or productive activities in accordance with subsection (e);
>
> (7) *determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624*; and
>
> . . . . . .
>
> In carrying out this subsection, the Attorney General may use existing risk and needs assessment tools, as appropriate.

18 U.S.C. § 3632(a) (emphasis added).

Congress further directed the Attorney General to work with a range of stakeholders[1] to develop recommendations for evidence-based[2] recidivism reduction programs and productive activities and to conduct ongoing research and data analysis to determine which programs are

---

[1] The listed stakeholders in the statute are the BOP Director, the Director of the Administrative Office of the United States Courts, the Director of Probation and Pretrial Services, the Director of the National Institute of Justice, the National Institute of Corrections, and the IRC. 18 U.S.C. § 3631(a).

[2] Evidence-based means based upon actuarial (mathematical) analysis of a large dataset to find statistical correlations between certain traits and outcomes. Factors correlated with recidivism in prior studies, for example, have included criminal history, gender, age, marital status, education, employment, school grades, and parental characteristics, among others. Different factors—or the same factors, with different weights—are used to predict the likelihood of re-offending in general versus specific risk of violent offending or sexual offending. When an assessment instrument is based upon such data, the instrument still must be validated, meaning tested with a comparable population to see if the predictions are accurate, before it can be used officially. Kevin S. Burke, *Evidence-Based Sentencing*, in The National Judicial College & Justice Speakers Institute, *Science Bench Book for Judges, 2d ed.* (2020).

most effective at reducing recidivism. 18 U.S.C. § 3631(b)(2)-(3).  Further, the Attorney General was directed to *annually* "review, validate, and release publicly on the Department of Justice website" the risk and needs assessment system created under § 3632.  That annual review must include:

> (A) any subsequent changes to the risk and needs assessment system . . .
>
> (B) the recommendations developed [regarding evidence-based recidivism reduction programs], using the research conducted [on the effective, efficient, and most successful EBRR programs];
>
> (C) an evaluation to ensure that the risk and needs assessment system bases the assessment of each prisoner's risk of recidivism on indicators of progress and of regression that are dynamic and that can reasonably be expected to change while in prison;
>
> (D) *statistical validation of any tools that the risk and needs assessment system uses*; and
>
> (E) an evaluation of the rates of recidivism among similarly classified prisoners to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups . . .

18 U.S.C. § 3631(b)(4) (emphasis added).

Based on these directives, the Attorney General and multiple stakeholders developed the PATTERN risk assessment.  The BOP was actively involved in the development, as were nationally known experts on risk assessment.  Implementation of the First Step Act time reduction program and the BOP's authority to administer risk assessments as developed by the Attorney General and IRC, was subject to Notice and Comment.  *See* FSA Time Credits, 85 Fed. Reg. 75268-01 (Nov. 25, 2020).  The PATTERN risk assessment tool has been revised since its initial release, based on the ongoing review and statistical data analysis required.  The version in

6

use at the time of Delorenzo's April 2023 and October 2023 assessments was PATTERN version 1.3, adopted in April 2022. National Institute of Justice (NIJ), *2022 Review and Revalidation of the First Step Act Risk Assessment Tool* 5 (March 2023). Among the changes, version 1.3 raised the cut-off point between low risk and medium risk scores, so that more individuals would be eligible for earning higher levels of credit and applying those credits to reduce their sentences. *Id.* at 6.

Version 1.3 predicts the likelihood of a new arrest or return to BOP within three years of release and the likelihood of re-arrest for a suspected act of violence within three years from release. *Id.* at 9–10. Validity of the Male PATTERN risk assessment was based on the analysis of data from 32,804 men released from custody in 2017 and in 2018, comparing their predicted recidivism rates based on PATTERN scores with their actual recidivism rates at one, two, and three years after release. Among the males released when their general risk category was high, 79.6% recidivated during the three years, whereas only 10.5% of those in the minimum general risk category recidivated within three years. *Id.* at 15. Among those with a high violent risk rating, 37.2% were arrested for a violent crime within three years of release, while only 1.5% of those in the minimum risk category were arrested for a violent crime within three years of release. *Id.* at 16. The study had high predictive validity. *Id.* at 16–17, 29. Analysis of the data also showed that those who reduced their risk level group from time of entry to release were less likely to recidivate than those who stayed at the same risk level. *Id.* at 19. Finally, logistic regression analysis confirmed that reduction in risk level group was produced by dynamic factors in the study other than age. *Id.* at 35. The detailed report provides strong evidence of the validity and reliability of PATTERN at predicting risk of recidivism.

Version 1.3 has 15 variables that are used to assess recidivism risk: (1) age at time of assessment; (2) whether offender is required to register as a sex offender under the Adam Walsh Act; (3) whether his current offense of conviction was for a violent offense; (4) his criminal history category; (5) history of escapes; (6) history of violence; (7) education score; (8) whether he needs or has completed a drug program; (9) whether he has had any incident reports in the past 120 months of custody; (10) whether he has any serious incident reports in the past 120 months of custody; (11) length of time since last incident report; (12) length of time since last serious incident report; (13) refusal to participate in financial responsibility program; (14) EBRR programs completed; (15) work programs completed. Five of these variables are static, meaning that nothing can improve[3] them: criminal history, history of violence, history of escapes, sex offender status, and whether current conviction is for a violent crime. *Id.* at 10–11. The remaining 10 variables are dynamic, meaning they can change (for better or worse). Except for age, the dynamic factors can be changed by the defendant's conduct and efforts. Points are assessed for the risk factors, and the higher number of points, the greater the risk. For some of the dynamic factors, an inmate can earn negative points to offset some of the positive points.

The variables are not weighted equally. Criminal history points can range from 0 (category I) to 40 (Category VI) and thus carry the most potentially negative weight. Age is the next highest, running from 0 (over age 60) to 35 (under age 26). History of violence points are based on seriousness of the violence and how much time has passed since the last violent event, running from 0 for no violent history to 7 for a serious violent event within the last five years. Escape history is similar, with the highest score being 9 for any serious escape or a minor escape

---

[3] Technically, static factors are those that cannot be changed. The offense of conviction and criminal history score at conviction are truly static. One can conceive of an inmate getting involved in activity while in prison that changes his history of violence, history of escapes, and/or sex offender status.

8

within the last 5 years.  If the offense of conviction for this incarceration was violent, 5 points are added.  The highest point value for incident reports, serious incident reports, and time since such reports, is 3 points for each of them. Refusal to participate in financial responsibility is 2 points.

The variables on which an offender can reduce his recidivism risk are education, where having a high school diploma or GED earns -2 and being enrolled in GED class earns -1.  If the offender is determined not to need a drug program, he receives -5.  Completing the residential drug program earns -4, while the non-residential program earns -2.  Completing a single Recidivism Reduction program earns -3.  The points for Recidivism Reduction programming increase unevenly, with 2 to 3 programs earning -6, 4 to 10 programs earning -9, and more than 10 programs earns -12.  Completing a work program earns -1; 2 or more work programs earns -2.

Central to Delorenzo's complaint is that one earns First Step Act time credits while participating in Recidivism Reduction programming, but those time credits can only be applied to move him earlier to pre-release custody or to supervised release if he has a risk classification of minimum or low.  18 U.S.C. § 3624(g).  This limit is created by the First Step Act, the same legislation that directed creation of the risk assessment instrument.

**B. Delorenzo's Claims**

    **1. Hobbs Act Robbery as a Violent Crime**

Definitions and context matter.  When passing statutes, legislatures often use definitions, trying to avoid challenges for vagueness. *See*, *e.g.*, 18 U.S.C. § 5 (defining "United States" for purposes of Title 18) and 18 U.S.C. § 36 (defining "major drug offense" as used in this section).  When enacting 18 U.S.C. § 924, prohibiting the use of a firearm during, in relation to, or in furtherance of a crime of violence, Congress included a definition of "crime of violence":

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Congress also imposed enhanced penalties on those convicted of being a person in possession of a firearm after three prior convictions for a serious drug offense or a violent felony. Congress provided the following definition:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* at § 924(e)(2)(B).

In casual conversation, many laypeople and lawyers probably would think that a crime of violence and a violent felony mean the same thing. As defined by Congress, though, in different contexts, the definitions differ somewhat. Using a firearm in the course of threatening to kill someone's racehorse would be a crime of violence under the elements clause for purposes of using a firearm in the course of a crime of violence, because force against person or property is included in the definition. The same offense, threatening to shoot the racehorse, presumably a felony, would not qualify as a violent felony under the elements clause, because the definition is different and does not include threatened use of force against property.

Delorenzo relies on *United States v. Davis* to support his challenge. There, the Court looked at the residual clause definition of § 924(c)(3), a crime that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." While robbery remained a crime of violence under the elements clause, conspiracy to commit robbery could not, because one can combine with others to plan a robbery and take a substantial step towards its completion without the use, attempted use, or threatened use of force. The Government looked to define conspiracy to commit robbery as a crime of violence by looking to the residual clause definition. The residual clause was held unconstitutional for vagueness, because determining exactly what is a "substantial risk" that physical force will be used in the ordinary case is too speculative. *Davis*, 588 U.S. at 452. Importantly, *Davis* did not define "crime of violence;" the Court merely ruled that the residual clause *definition* provided by Congress was too vague to give adequate notice of what behavior was prohibited by that statute.

The PATTERN risk assessment tool has its own definition of "violent offense" using as Violent Offense Codes convictions under certain criminal code sections which are considered violent offenses *for purposes of analyzing an offender's recidivism risk*. Scientists must operationalize—clearly define—the concepts they are studying to reduce bias and subjectivity in research results and to allow other scientists to conduct similar tests, using the same definitions, to get the same or similar results. Dovetail, *What is Operationalization?* (Feb. 5, 2023), http://dovetail.com/research/operationalization/#. Whether they call the offense of conviction a "violent offense" or a tier 2 offense or something else, the statistical analyses show that a person convicted of the offenses listed on their Violent Offense Code list are more likely to recidivate. The developers of the PATTERN risk assessment tool were charged with creating an evidence-

based and statistically valid risk assessment instrument, defining the terms they measured, and recognizing consistently what risks increased the likelihood of recidivism. The PATTERN risk assessment tool fulfills this charge.

Because conspiracy to commit Hobbs Act robbery was not a "crime of violence" under 18 U.S.C. § 924(c), Delorenzo was not convicted of using a firearm in furtherance of that crime. But, a violation 18 U.S.C. § 1951 – Delorenzo's offense of conviction - is listed as a "violent offense" on the PATTERN's instruction guide for calculating scores, and it was properly included as a violent offense in his risk assessment score, adding 5 points. His challenge to the classification of his offense by the PATTERN risk assessment instrument fails.

### 2. The PATTERN Assessment and "Meaningful" Opportunity to Reduce Recidivism Classification

Delorenzo claims that PATTERN violates 18 U.S.C. § 3632(a) because it does not give him a "meaningful" opportunity to reduce his recidivism classification. The Fourth Circuit Court of Appeals has not addressed this issue, but district courts within the Circuit have rejected this challenge. *See, e.g., Swan v. Rokosky*, No. SAG-24-1973, 2025 WL 637451, at *4 (D. Md. Feb. 27, 2025), *appeal docketed*, No. 25-6258 (4th Cir. April 3, 2025). In fact, Delorenzo has had a meaningful opportunity to reduce his classification. In just the first two years of his incarceration, Delorenzo has reduced his recidivism risk score from higher than 68 to 55, just one point away from moving into the medium classification. While he admittedly may not remain incarcerated long enough for his score to move into the low classification, absent another incident report, he should move into the medium classification if he completes either one work program, the non-residential drug treatment program, or six other programs. This is a meaningful opportunity to reduce his risk classification. The statute requires that all prisoners

12

have a meaningful opportunity to reduce their recidivism risk classification, not a meaningful opportunity to reduce their sentences.

### 3. PATTERN's Inclusion of Static Factors

Delorenzo argues that inclusion of heavily weighted static factors in the risk assessment instrument is contrary to Congressional directive.  Because criminal history, history of violence, and history of escapes are based on past events that cannot be changed, he alleges that the BOP has created a risk assessment instrument that prevents him from taking advantage of time reductions that Congress intended to confer.

While his frustration is understandable, Delorenzo reads too much into the statute. The statute does not require that the risk assessment be based only on dynamic factors, or even primarily on dynamic factors. Rather, the statute requires the instrument to base its risk assessment on factors, including those that are dynamic.  The term "including" is a broad term, indicating that what follows is not an exclusive list.  For this reason, courts that have addressed this issue have uniformly ruled that the Attorney General and the IRC could include static factors as well as dynamic factors in the risk assessment instrument.  *See, e.g., Green v. Hudson*, No. 23-3141, 2024 WL 960497, at *3 (10th Cir. March 6, 2024); *Feagin v. F.C.I. Beckley Warden*, No. 5:24cv00743, 2025 WL 2621805, at *8 (S.D. W.V. Aug. 4, 2025).  The overriding concerns of Congress were (1) to make sure dynamic factors were also included and (2) to make sure that the assessment instrument was valid and evidence-based.  PATTERN meets those objectives.

### 4. BOP's Alleged Failure to Facilitate Delorenzo's Participation in Recidivism Reduction Programming and to Provide him Incentives for Participating

Delorenzo alleges that the BOP has failed to facilitate his participation in Recidivism Reduction programming and failed to provide him incentives for participating.  I cannot say that the BOP has not facilitated his participation.  He has been provided the opportunity and has taken

13

six programs during 2022 and had started another in 2023, according to his Inmate Education Data Transcript printed April 11, 2023.  ECF No. 4-4 at 12.

Certainly, the statute contemplates privileges for participation, including extra phone privileges, extra visitation, transfer to a facility closer to home, and other incentives adopted by the BOP, and the BOP Director has been directed to develop additional policies to provide appropriate incentives.  18 U.S.C. § 3632(d)(3).  Following the notice given in the Federal Register (85 Fed. Reg. 75268-01 (Nov. 25, 2020)) before adopting the current BOP regulations on credits for completion of Recidivism Reduction programs, over 250 comments were received during the response period, which ended January 25, 2021.  *FSA Time Credits*, 87 Fed. Reg. 2705-01 (Jan. 19, 2022).  In summarizing the final rule, the comments received, and responses to those comments, the Federal Register noted that even inmates who cannot earn First Step Act Time Credits "may still earn other benefits for successfully completing recidivism reduction programming, such as increased privileges (commissary, visiting, and telephone) for participation in [Recidivism Reduction] Programs or PAs [Productive Activities], as authorized by the Bureau."  *Id.* at 2706.

Congress delegated this task to the BOP and with that delegation expressly gave the BOP broad discretion to fashion incentives, eligibility, and time frames. The court gives great deference to the BOP in choosing how to carry out its discretion.  Delorenzo has neither cited nor provided a copy of any BOP policy to support his claim that he has been denied incentives (other than the ability to apply his First Step Act Time credits to reduce his active sentence) *because of his classification* as a high-risk offender.  Absent allegations of (1) a specific BOP policy that fails to comply with the broad discretion granted by Congress or (2) failure of the BOP to

14

comply with a specific identified BOP policy, whether and what incentives Delorenzo earns (other than FSA credits) is up to the BOP, not the court.

### IV. Conclusion

For the reasons stated, I will grant the Motion to Dismiss on the grounds that the length of his incarceration is not in violation of the Constitution or laws of the United States. An appropriate order will be entered this day.

Enter: September 26, 2025

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge